762 So.2d 281 (2000)
STATE of Louisiana
v.
Harold J. NEAL.
No. 00-KA-41.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 2000.
*283 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Rebecca J. Becker, Nancy Miller, Robert J. Odinet, Assistant District Attorneys, Gretna, Louisiana, Attorneys for Plaintiff/Appellee.
Carey J. Ellis, III, Louisiana Appellate Project, Rayville, Louisiana, Attorney for Defendant/Appellant.
Panel composed of THOMAS F. DALEY and CLARENCE E. McMANUS, JJ., and THOMAS C. WICKER, Jr., J. Pro Tem.
WICKER, Judge Pro Tem.
The defendant, Harold Neal, was convicted of theft of goods valued between $100.00 to $500.00, a violation of La. R.S. 14:67.10, and was sentenced to serve two years of imprisonment at hard labor. The State filed a multiple offender bill of information alleging the defendant to be a fourth felony offender. After a multiple offender hearing on August 13, 1999, the trial judge found the defendant to be a fourth felony offender, vacated the original sentence, and imposed an enhanced sentence of life imprisonment without benefit of probation, parole or suspension of sentence. The trial judge subsequently granted the defendant's timely appeal motions. Pursuant to the defendant's timely motion to reconsider sentence, the trial court determined that the life sentence was excessive, vacated that sentence, and re-sentenced the defendant to serve 20 years at hard labor without benefit of probation, parole, or suspension of sentence. The State objected to the reduction of the mandatory sentence, and filed timely motions to reconsider sentence, which the judge denied; and for appeal, which the judge granted.

FACTS
On February 15, 1999, the defendant entered the E-Z Serve convenience store on the corner of Veterans Boulevard and Green Acres Road, and took a three-tiered rack of Marlboro cigarettes. A rack held 95 packs of cigarettes and each pack sold for $3.19. Two customers chased him down the street. The two customers returned 60 packs of cigarettes that fell as the defendant fled.
The defendant was apprehended a few moments later and returned to the parking lot of the E-Z Serve, where he was positively identified by the cashier as the man who had taken the rack of cigarettes without paying for them.
On appeal, the defendant alleges that the trial court erred in failing to file written findings as to the multiple offender proceeding; and, that there was insufficient evidence presented at the multiple offender hearing to find that defendant's prior offenses resulted in convictions based on valid guilty pleas. The State alleges that the trial court erred in sentencing defendant to a term below the statutorily mandated minimum sentence. In addition, we will review the record for errors patent.

DEFENDANT'S APPEAL
In his first assignment, defendant complains that the trial court should have filed written reasons for determining the defendant to be a multiple offender, as required by La. R.S. 15:529.1(D)(3). The State responds that the trial judge complied with this requirement because the court articulated the reasons, which have been transcribed, for finding the defendant to be a fourth felony offender.
According to La. R.S. 15:529.1(D)(3), the trial court "shall provide written reasons for its determination" that the defendant is a multiple offender. In this case, before imposing the enhanced sentence, the trial judge gave oral reasons in support of finding the defendant to be a fourth felony offender. These reasons were transcribed and are a part of the record. Thus, any failure to supply written reasons is harmless error. State v. Perkins, 99-1084 (La.App. 5 Cir. 1/25/00), 751 So.2d 403.
*284 In his second allegation of error, the defendant alleges that the trial judge improperly found him to be a multiple offender because the State failed to present sufficient evidence that he waived his Boykin[1] rights when he pled guilty in the three predicate offenses. The State responds that it met the requisite burden of proof.
To prove that a defendant is a multiple offender, the State must establish by competent evidence, that there is a prior felony conviction and that the defendant is the same person who was convicted of the prior felony. State v. Chaney, 423 So.2d 1092, 1103 (La.1982); State v. Williams, 98-651 (La.App. 5 Cir. 2/10/99), 729 So.2d 14, 19. When a predicate conviction was obtained pursuant to a plea of guilty, the State must meet the burden of proof outlined by the Louisiana Supreme Court in State v. Shelton, 621 So.2d 769 (La.1993).
If a defendant denies the allegations of the multiple bill of information, the State's initial burden is to show the existence of a guilty plea and that the defendant was represented by counsel when the plea was entered. Once the State meets this burden, defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity in the taking of the guilty plea. Shelton, 621 So.2d at 779.
If the defendant is successful, the State must prove the constitutionality of the plea by producing (1) a "perfect" transcript of the Boykin colloquy between the defendant and the trial judge, (2) or any combination of a guilty plea form, (3) a minute entry, or (4) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State proved that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.[2]Shelton, 621 So.2d at 779-780. See also, State v. Hollins, 99-278 (La.App. 5 Cir. 8/31/99), 742 So.2d 671, 685.
In the instant case, the multiple offender bill of information alleged that the defendant had three prior convictions. The State alleged that defendant had thrice before pled guilty: (1) on April 8, 1987 to attempted manslaughter in case number 86-3732; (2) on June 22, 1990 to aggravated battery in case number 90-2078; and, (3) on December 16, 1991 to simple burglary in case number 91-4465, all in Jefferson Parish. The exhibits introduced in support of the three predicate offenses included minute entries which indicated that the defendant entered a guilty plea and was represented by counsel, that the defendant was personally advised of his Boykin rights by the trial judge, and that he waived those rights. Also, the records contain "Waiver of Constitutional Rights" forms signed by the defendant and his attorney.[3]
This evidence, which established the existence of the predicate guilty pleas and which shows the defendant was represented by counsel, satisfied the State's initial burden under Shelton. Therefore, it was the defendant's burden to produce some affirmative evidence of an infringement of *285 his rights or of a procedural irregularity in the taking of the guilty plea. Shelton, 621 So.2d at 779. Defendant attempted to meet this burden through his testimony at the multiple offender hearing that he did not recall being advised of his Boykin rights in any of the predicate guilty pleas. Defense counsel then argued that the State had not met its burden because transcripts of the plea colloquies were not introduced. After the prosecutor's argument in response, the trial judge ruled that the defendant had not made the requisite showing under Shelton merely because the defendant did not remember being advised of his rights when he previously pled guilty.
Defendant, in the instant case, likewise did not present any affirmative evidence showing an infringement of his rights or a procedural irregularity in the predicate guilty pleas. In State v. Scamardo, 97-197 (La.App. 5 Cir. 2/11/98), 708 So.2d 1126, 1132, writ denied, 98-0672 (La.7/2/98), 724 So.2d 204, this Court held that the defendant had not made the necessary showing under Shelton when he asserted at the multiple offender hearing that he was not advised of his constitutional rights at the prior guilty pleas, but did not present any affirmative evidence in support of his contention. Id. at 1132. Thus, in this case the State was not required to introduce a "perfect" Boykin transcript in connection with the predicate offenses. State v. Shelton; State v. Scamardo, supra.
We conclude that the trial judge did not err in finding defendant to be a fourth felony offender. Accordingly, we find no merit to defendant's second allegation of error.

STATE'S APPEAL
The State contends that the trial judge improperly denied the State's motion to reconsider sentence filed after the trial judge re-sentenced the defendant to 20 years of imprisonment, instead of the mandatory life sentence as a fourth felony offender. In his reply brief, the defendant responds that the trial judge did not abuse his discretion in determining that a 20-year sentence was the appropriate sentence under the circumstances.
After the trial court imposed the enhanced sentence of life imprisonment, the defendant filed a timely motion to reconsider sentence under La.C.Cr.P. art. 881.1. Defense counsel argued that the life sentence was constitutionally excessive because the underlying offense was not a crime of violence, because much of the stolen merchandise was recovered by the store, and because no one was harmed. The prosecutor acknowledged that the last felony was non-violent, but pointed out that the life sentence was mandatory. The prosecutor further noted that two of the previous offenses, aggravated battery and attempted manslaughter, were defined as crimes of violence. The trial court granted defendant's motion, vacated the life sentence and imposed an enhanced sentence of 20 years of imprisonment.
The Eighth Amendment of the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A mandatory minimum sentence under the Habitual Offender Law may still be reviewed for constitutional excessiveness. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672.
When a trial court determines the minimum sentence mandated by La. R.S. 15:529.1 makes no "`measurable contribution to acceptable goals of punishment'" or that the sentence amounts to nothing more than "`the purposeful imposition of pain and suffering'" and is `"grossly out of proportion to the severity of the crime,'" the trial judge must reduce the sentence to one that would not be constitutionally excessive. State v. Dorthey, supra, at 1280. However, a trial judge's determination that a mandatory minimum sentence is excessive requires more than merely uttering the above-quoted *286 phrases. State v. Johnson, supra, at 676. Moreover, "a sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality." State v. Johnson, 709 So.2d at 676; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1093, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.

State v. Johnson further stated that:
... to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

Young, 94-1636 at pp. 5-6, 663 So.2d at 528 (Plotkin, J., concurring).
When evaluating whether the defendant has met his burden, the trial court must be mindful of the goals of the Habitual Offender Law, which are to deter and punish recidivism. Further, if the trial court finds clear and convincing evidence that justifies reducing the mandatory minimum sentence, the court cannot impose whatever sentence it may feel is appropriate. Rather, the trial court must impose the longest sentence that is not constitutionally excessive with specific reasons to explain why that sentence is the longest sentence that is not constitutionally excessive. A downward departure from the minimum sentence mandated by La. R.S. 15:529.1 should only occur in "rare situations." State v. Johnson, supra at 677.
In the instant case, the mandatory sentence is life imprisonment without benefit or parole, probation, or suspension of sentence because the defendant is a fourth felony offender with two predicate felonies that are defined as crimes of violence. See, La. R.S. 14:2(13); La. R.S. 15:529.1(A)(1)(c)(ii).
The trial judge, in finding that the mandatory life sentence was constitutionally excessive, recognized that the defendant had previously pled guilty to prior crimes of violence, attempted manslaughter in 1987 and aggravated battery in 1990. But, the judge pointed out that the third offense to which he pled guilty in 1991 was simple burglary, and that no "threats of violence" were involved in the underlying offense. The judge also emphasized that eight years had passed between the simple burglary conviction and the commission of the last felony. The trial judge stated that he considered the factors set forth in Article 894.1, especially the defendant's relatively young age, (30 years at the time of sentencing). The trial judge especially considered that the goods stolen in this instant case were cigarettes valued at $160.00, and that shortly after the defendant had committed the current offense of theft of goods valued between $100.00 to $500.00, the legislature had amended the theft statute to provide that theft of goods under $300.00 was a misdemeanor offense,[4] so that defendant was sentenced to life *287 imprisonment for a crime that six months later became a misdemeanor offense.
The trial judge concluded that a life sentence, "just under these particular circumstances," was out of proportion to the severity of the offense, and did not make any contributions to the acceptable levels, (or goals) of punishment. The trial court further decided, however, that given the circumstances of this case, a light sentence was not warranted, and that the lowest reasonable sentence would be twenty years at hard labor, without benefit of probation, parole or suspension of sentence.
We too note that the defendant's instant conviction was for a non-violent crime, that there was a considerable length of time between the defendant's prior convictions and the instant offense, and the defendant's young age. We especially note that the legislature itself has seen fit to remove the offense from those considered a felony. This supports the trial judge's decision that the defendant, if sentenced to life imprisonment under the circumstances of this case, would be a victim of the legislature's failure to assign a sentence which is meaningfully tailored to the culpability of this offender and the gravity of this offense. We therefore find that the trial court did not err in re-sentencing defendant to a term below the statutory minimum.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990). We find no patent errors which warrant consideration.
For the above discussed reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.
McMANUS, J., Dissents.
McMANUS, J., Dissenting.
I respectfully dissent. Defendant was charged and convicted of theft of goods valued between $100 to $500, a violation of LSA-R.S. 14:67.10.
According to LSA-R.S. 14:67.10, defendant's sentencing exposure was imprisonment, with or without hard labor, for not more than two years or a fine of not more than two thousand dollars, or both. Since defendant may be imprisoned at hard labor, he was charged and convicted of a felony. LSA-R.S.14:2(4); LSA-R.S. 14:2(6).
After a multiple bill hearing, defendant was found to be a fourth felony offender. Two of defendant's three predicate convictions were for attempted manslaughter in 1987 and aggravated battery in 1990, both of which are crimes of violence as defined by LSA-R.S. 14:2(13). Defendant's third predicate conviction was for simple burglary in 1991, a non-violent crime.
The Habitual Offender Statute considered the non-violent nature of predicate offenses and found that it does not alone justify rebutting the presumption of constitutionality. As a fourth felony offender, defendant faced the following penalty as provided by LSA-R.S. 15:529.1(A)(1)(c):
(c) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then:
(i) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(ii) If the fourth or subsequent felony or any of the prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or of any other crime *288 punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In this case, the mandatory sentence is life imprisonment without the benefit of parole, probation, or suspension of sentence because the defendant is a fourth felony offender with two predicate felonies that are defined as crimes of violence. LSA-R.S.14:2(13); LSA-R.S.15:529.1 (A)(1)(c)(ii).
In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the Supreme. Court held that to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:
[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.
Accordingly, under Johnson, a trial judge may reduce a statutorily mandated sentence, should the trial judge find the sentence to be constitutionally excessive because the defendant is "exceptional" in the aforementioned manner.
To justify its departure from the statutory mandatory minimum sentence, the trial court stated that he was reluctant to sentence the defendant to life imprisonment when the fourth felony offense was theft of a few dollars. The trial court also noted that the defendant's third offense was for simple burglary, a non-violent crime, and eight years had passed between the simple burglary conviction and the commission of the last felony.
The record does not reflect that defendant demonstrated, by clear and convincing evidence, that he is exceptional and deserving of a departure from the mandatory sentence. While it is clear that defendant was young at the time of sentencing (30 years old), he had already committed several serious offenses, including attempted manslaughter which arose out of a bill of information charging defendant with two counts of attempted second degree murder. On April 8, 1987, the defendant pled to attempted manslaughter on both counts and received a one year jail sentence. Three years later, defendant committed an aggravated battery to which he pled guilty and he was sentenced to six months in parish prison. One year later, the defendant committed simple burglary for which he pled guilty and was sentenced to six years at hard labor. Now, eight years after his third felony conviction, defendant committed his fourth felony, theft of goods between $100 and $500. While defendant is young, he has already demonstrated a lack of respect for the law and it is clear that defendant's reduced sentences and lenient treatment by the justice system did not impress upon him the desire to become a law-abiding citizen. Accordingly, I would vacate the sentence and remand it for re-sentencing in accordance with the mandatory sentence prescribed by LSA-R.S. 15:529.1(A)(1)(c)(ii).
NOTES
[1] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
[2] A "perfect" transcript is a transcribed colloquy between the trial judge and the defendant reflecting that the defendant was informed of and specifically waived his three Boykin rights. Shelton, at 780.
[3] All but one of the waiver of rights forms in each of the predicate offenses, 90-2078, is signed by the trial judge. Although the defendant did not specifically complain about the unsigned form, it is noted that this Court recently addressed this issue in State v. Perkins, 99-1084 (La.App. 5 Cir. 1/25/00), 751 So.2d 403. The Perkins court held that, even though the trial judge did not sign the waiver of rights form in a predicate guilty plea, the record of that predicate offense sufficiently established that the defendant had knowingly and voluntarily waived his constitutional rights.
[4] The defendant committed the instant offense on February 15, 1999. La. R.S. 14:67 was amended by Acts 1999, No. 1251, effective August 15, 1999, and now provides in part that:

B(2) When the misappropriation or taking amounts to less than a value of three hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than five hundred dollars, or both. If the offender in such cases has been convicted of theft two or more times previously, upon any subsequent conviction he shall be imprisoned, with or without hard labor, for not more that two years, or may be fined not more than two thousand dollars, or both.